Commonwealth ex rel. Corbin, Appellant, *v.*
Myers.

·Argued May 27, 1965. Before BELL, C. J., MUSMAN-NO, JONES, COHEN, EAGEN, O'BRIEN and ROBERTS, JJ.

*Robert L. Corbin,* in propria persona, and *Gerald E. Ruth,* for appellant.

*John T. Miller,* First Assistant District Attorney, with him *Lewis H. Markowitz,* Assistant District Attorney, and *Daniel W. Shoemaker,* District Attorney, for appellee.

OPINION BY MR. JUSTICE EAGEN, September 29, 1965:

On October 10, 1950, Robert Corbin, Harold J. Albright and Genevieve Heistand were indicted for the murder of one Anna R. Bittle. On January 5, 1951, Corbin, after a separate trial, was convicted by a jury of murder in the first degree, and sentence was fixed at life imprisonment. Following the denial by the court en banc of a new trial motion, sentence was imposed on June 25, 1951, in accordance with the jury's verdict. No appeal from the judgment was entered.

On November 30, 1964, the present action in habeas corpus was filed, which the lower court dismissed without hearing.[1] This appeal followed.

Several reasons assigned in support of the issuance of the writ are clearly without merit, or are of such

---

[1] Similar actions have been previously instituted and dismissed.

nature that they may not be properly raised in this collateral action. While these need not detain us, others require discussion.

Albright, indicted jointly with Corbin, but tried separately, was represented by the same lawyer. Corbin now contends that this constituted a conflict of interest on the part of counsel which precluded his receiving a fair trial in violation of the requirements of due process. No facts, aside from the dual representation itself, are alleged to support this contention, and an examination of the record fails to offer any substantiation.

Both Corbin and Albright testified at their individual trials. Each presented a similar defense, an alibi. Each denied any knowledge of, or participation in, the crime. Neither testified at the trial of the other. Under the circumstances, the dual representation did not jeopardize Corbin's interests and did not, in any manner, affect the effectiveness of his counsel's representation, or the fairness of his trial. The facts are materially different from those presented in *Commonwealth v. Meehan,* 409 Pa. 616, 187 A. 2d 579 (1963) ; *Commonwealth ex rel. Whitling v. Russell,* 406 Pa. 45, 176 A. 2d 641 (1962) ; and kindred cases.

Corbin also maintains that his counsel lacked adequate time and opportunity to prepare his defense for trial. The record discloses that a formal court order appointing counsel for Corbin was entered on January 2, 1951, under the provisions of the Act of March 22, 1907, P. L. 31, as amended, 19 P.S. §784. On the same day, the trial began. However, the record also discloses that the same counsel appeared in court on Corbin's behalf on October 18, 1950, moved for and secured a postponement of the trial from the October to the January sessions in order to properly prepare. No further continuance was requested. It is thus apparent that his trial counsel was engaged in representing him

for at least seven weeks before trial,[2] and that this was considered sufficient time to prepare is evidenced by the fact that no delay beyond January was asked.

Corbin also complains that his conviction resulted, at least in part, from constitutionally tainted evidence admitted at trial.

It appears that, during the months immediately following the killing, Corbin was taken into custody and questioned on several occasions by investigating police officers. These officers testified and detailed the results of this questioning during the Commonwealth's case. They stated that Corbin consistently and steadfastly denied any knowledge of the crime. However, the description of his activities on the night involved, as given to the police officers and related in their testimony, differed significantly from his own testimony at trial, and thereby, at least, cast serious doubt upon his credibility. For instance, the police witnesses testified that Corbin admitted being with Genevieve Heistand on the Beaver Street Bridge in York, Pennsylvania, the place where the crime took place, on the night it occurred. Corbin, in his trial testimony, denied being on the bridge at any time during the night in question, and also denied telling the police he had been there. The police witnesses also testified that, during one period of questioning, Corbin was confronted with Genevieve Heistand, who had previously admitted to them that she was present at the time of the crime and involved Corbin therein,[3] and that, during the confrontation, Corbin spontaneously said: "Jenny, I didn't tell on you, why did you tell on me?" Corbin denied ever making such a statement.

The record fails to establish affirmatively that before or during these periods of questioning by the po-

---

[2] The court appointment was probably effected to insure compensation for his attorney.

[3] Miss Heistand was a Commonwealth witness.

lice, Corbin was advised of his rights to remain silent, or to have the assistance of counsel. Moreover, during his trial testimony, Corbin testified that, during one of the questioning periods, he asked for the opportunity to see his lawyer and to contact his family, which requests were not granted. This testimony was not contradicted by the Commonwealth's witnesses.

It is therefore urged that under *Escobedo v. Illinois*, 378 U.S. 478 (1964), it was reversible error to have admitted in evidence the incriminating statements resulting from the police questioning. However, *Escobedo* is not retrospective in application and is not, therefore, applicable to the present case: *Commonwealth v. Negri*, 419 Pa. 117, 213 A. 2d 670 (1965). We need not determine whether or not the "accusatorial stage" had been reached during the periods of questioning to which Corbin had been subjected, nor whether or not *Escobedo* applies to the admission of the type of statements here involved.

However, the court below erred in dismissing the present action without hearing. At trial, the court failed to conduct an independent hearing upon the issue of the voluntariness of Corbin's statements, as mandated by *Jackson v. Denno*, 378 U.S. 368 (1964). And *Jackson* is retrospective in application: *Commonwealth ex rel. Butler v. Rundle*, 416 Pa. 321, 206 A. 2d 283 (1965). While no specific objection to the admission of the testimony now questioned was offered at trial, Corbin's counsel made it abundantly clear throughout the cross-examination of the police witnesses and the direct examination of Corbin that he was questioning the circumstances under which Corbin was interrogated. Moreover, Corbin testified to harassment and periods of prolonged interrogation. The voluntariness issue was, therefore, adequately raised. See, *Jackson v. Denno*, supra. The situation here presented differs importantly from that in *Commonwealth*

*ex rel. Fox v. Maroney,* 417 Pa. 308, 207 A. 2d 810 (1965), wherein nothing that occurred at trial indicated a contest as to the voluntariness of the admissions introduced in evidence.

We will, therefore, remand the case for hearing, where, in accordance with the requirements of due process, the voluntariness of Corbin's statements offered at trial may be fully explored and determined.

Order vacated and case remanded.

---

CONCURRING OPINION BY MR. JUSTICE ROBERTS:

I concur in the Court's disposition of the issues raised by this appeal subject to the following limitation. As I noted in my dissent in *Commonwealth v. Negri,* 419 Pa. 117, 213 A. 2d 670 (1965), I am in disagreement with the Court's holding that the mandate of *Escobedo v. Illinois,* 378 U.S. 478, 84 S. Ct. 1758 (1964), is not to be given retrospective application. I am no less in disagreement with the reiteration of that holding in the instant case.

However, I see no profit in continually noting my dissent on this point and, therefore, while remaining committed to the task of urging a reversal of the position taken by this Court in *Negri,* I will join in that holding as the law of this Commonwealth until a majority concurs in my view or the Supreme Court of the United States rules on the matter.

Mr. Justice MUSMANNO joins in this opinion.

---

DISSENTING OPINION BY MR. JUSTICE COHEN:

I would affirm the action of the lower court. The petition for a writ of habeas corpus filed by the defendant was properly dismissed. None of the contentions plead in the writ and argued in the court below were argued before this Court.

The petitioner did, however, raise on appeal to this Court issues which were not raised or decided in the

court below. I would affirm the lower court's action on the issues which were raised in the court below recognizing that the petitioner may immediately file a new petition raising before that court the issues which he failed to present in the first instance.