Commonwealth ex rel. Toth, Appellant, *v.* Maroney.

558

[REDACTED]

Argued March 21, 1966. Before BELL, C. J., MUS-MANNO, JONES, EAGEN, O'BRIEN and ROBERTS, JJ.

[REDACTED]

*George Toth,* appellant, in propria persona.

*Edwin J. Martin,* Assistant District Attorney, and *Robert W. Duggan,* District Attorney, for appellee.

OPINION BY MR. CHIEF JUSTICE BELL, June 24, 1966:

This is an appeal from the Order of the Court of Common Pleas of Allegheny County which, after a hearing, discharged relator's petition for a writ of habeas corpus.

The relator, George Toth, was accused of murdering his wife by plunging a knife into her back before two

witnesses. After the killing, but on that same day, he was arrested by the police and signed a confession of guilt, when he was not represented by counsel. He was indicted for murder and pleaded not guilty. After the Commonwealth had called eleven witnesses to testify, he withdrew his plea of not guilty and while represented by Court-appointed counsel entered a plea of guilty. He was found guilty of murder in the second degree and sentenced on March 11, 1959, to 10 to 20 years imprisonment. He did not appeal his conviction and sentence.

After serving more than 6 years of his sentence, he filed the present petition for a writ of habeas corpus, contending that he was denied due process of law. The lower Court, after a hearing at which relator was represented by Court-appointed counsel, discharged the petition.

Relator's contentions are completely without merit. He alleges that at the time he was questioned by the police and at the time of his trial, he did not understand the English language. Relator originally emigrated to Allegheny County from Hungary approximately 10 months prior to the murder and 17 months prior to his trial. He specifically contends that he was denied due process of law (1) when the Court failed to supply him with an interpreter so that he could effectively talk with his attorney and prepare a defense, (2) when the Court refused to have each question and answer interpreted for him, and (3) when the Court admitted into evidence a statement given by him to the police at a time when he was not represented by counsel.

Although relator was not fluent in the English language, he had a good knowledge of it. He understandingly communicated with his attorney during conferences. At his habeas corpus hearing, his Court-appointed attorney who represented him at his murder

trial testified as follows: "A. I talked to him so many times, and I talked to him without the aid of an interpreter where I understood him and he understood me. Never at any time when I talked to him was there any suggestion about having an interpreter because we understood each other. . . . Q. Did you have conferences with Mr. Toth relative to this case?

"A. Many, many times. Q. Are you able to estimate for us? A. I can't estimate it. Over that period of six months I couldn't tell you, but it was a number of times. Q. During those meetings were you able to understand what he said to you? A. I understood him very well and he understood me.

"Q. Did you have any occasion at any time to have any doubt that he understood what you were saying?

"A. Had there been any doubt in my mind—By the Court: Q. The question did you have a doubt? A. No, I had no doubt whatsoever. By Mr. Abromson: Q. Did you find it necessary during your conferences with him to employ an interpreter? A. I didn't think it was necessary, although we had an interpreter in court. Q. I am talking about the times prior to the court? A. Never. Q. Is there any doubt in your mind that he understood you and that you understood him? A. I am telling you there wasn't any doubt in his mind or my mind. He understood me and I understood him."

At the commencement of the trial the Court appointed an official court interpreter and shortly thereafter appointed an additional court interpreter. One of the interpreters was used to translate the Court's reading of the indictment to the relator (defendant) and also was used at the direction of the Court when relator changed his plea from not guilty to guilty in order to make absolutely sure relator comprehended his action and the consequences thereof. Neither the relator nor his attorney made any request for a translation of the testimony or proceedings but the Court sua

sponte ordered an interpreter when a witness testified in a foreign language. If relator did not understand the testimony or the proceedings or any portion thereof, he or his counsel could and should have asked that it be interpreted by one of the official court interpreters. Instead, relator remained silent and now, after more than six years have passed since his plea and sentence, he alleges for the first time that he did not understand the testimony.

Relator's confession, which was given shortly after he committed the murder, was properly admitted into evidence. Relator contends that *Escobedo v. Illinois,* 378 U.S. 478, requires the presence of an attorney whenever a statement is taken, or that he be informed of his right to have an attorney present. The *Escobedo* case was decided in 1964. Relator was convicted and sentenced, we repeat, in 1959, and his conviction was final because he took no appeal therefrom. In *Commonwealth v. Negri,* 419 Pa. 117, 213 A. 2d 670, we held that *Escobedo* should not be applied retroactively to cases which became final prior to that decision. See also, *Commonwealth ex rel. Hobbs v. Russell,* 420 Pa. 1, 215 A. 2d 858; *Commonwealth ex rel. Frazier v. Maroney,* 419 Pa. 361, 214 A. 2d 221; *Commonwealth ex rel. Santiago v. Myers,* 419 Pa. 326, 214 A. 2d 206; *Commonwealth ex rel. Keller v. Maroney,* 419 Pa. 318, 214 A. 2d 249; *Commonwealth ex rel. Knowles v. Rundle,* 419 Pa. 300, 213 A. 2d 635; *Commonwealth ex rel. Shaffer v. Cavell,* 419 Pa. 218, 213 A. 2d 380; *Commonwealth ex rel. Taylor v. Maroney,* 419 Pa. 149, 213 A. 2d 355; *Commonwealth ex rel. Geiger v. Maroney,* 419 Pa. 147, 213 A. 2d 348; *Commonwealth ex rel. Derry v. Rundle,* 419 Pa. 146, 213 A. 2d 349; *Commonwealth ex rel. Lawrence v. Myers,* 419 Pa. 145, 213 A. 2d 347; and *Commonwealth ex rel. Corbin v. Myers,* 419 Pa. 139, 213 A. 2d 356.

In *Commonwealth ex rel. Keller v. Maroney,* 419 Pa., supra, at pages 320-321, we said: "Our conclusion

is fortified by this Court's recent decision in Commonwealth v. Negri, 419 Pa. 117, 213 A. 2d 670 (decided by this Court September 29, 1965), which held that Escobedo was not to be given retrospective effect in Pennsylvania. The term 'retrospective' as defined in Linkletter v. Walker, 381 U.S. 618, 622 (1965), is coupled with finality and '. . . applies to state court convictions which had become *final** before rendition of . . . [the opinion of the Supreme Court]. . . . By final we mean where the judgment of conviction was rendered, the availability of appeal exhausted, and the time for petition for certiorari had elapsed before our decision in . . . [Escobedo].' " (*Italics in original). See also *Johnson v. New Jersey,* 384 U.S. 719, filed 6/20/66, 34 L.W. 4592.

Furthermore, relator's confession was admitted into evidence without objection after he had pleaded guilty. As a matter of fact, his attorney ratified relator's confession when he said to the Court at the trial: "Mr. Boscia: If the Court Please, I don't intend to put the defendant on the stand. He stands on the statement as given at the time; namely, on August 11th, because it was fresh at that particular time."

Relator also contends that he was denied due process of law because the prosecuting attorney threatened him with the death penalty if he did not plead guilty. The prosecuting attorney categorically denied this allegation and the lower Court found that no threat was made either by word or action to induce relator to enter a plea of guilty.

For the foregoing reasons the action of the lower Court in discharging the petition for a writ of habeas corpus was clearly correct.

Order affirmed.

Mr. Justice COHEN took no part in the consideration or decision of this case.